**PALL CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, AFL–CIO Local 365, Intervenor.

No. 00–1426.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 2001.

Decided Jan. 4, 2002.

Thomas W. Budd argued the cause for petitioner. With him on the briefs was G. Peter Clark.

Daniel V. Yager, Heather L. MacDougall and Joseph E. Santucci Jr. were on the brief of amici curiae Council on Labor Law Equality and LPA, Inc. in support of petitioner. Charles I. Cohen entered an appearance.

David A. Fleischer, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel. David S. Habenstreit, Attorney, entered an appearance.

Craig Becker argued the cause and filed the brief for intervenor United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, AFL–CIO, Local 365. Eugene G. Eisner entered an appearance.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

Pall Biomedical Products Co. agreed to recognize Local 365, United Auto Workers, as the representative of employees at a new Pall facility not covered by an existing collective bargaining agreement (CBA) between Pall and the Union if unit work began to be performed there. Under the agreement Pall would recognize the Union upon a showing of majority support without first requiring that the Union prevail in an election conducted by the National Labor Relations Board. The central issue in this case is whether, as the Board concluded, the agreement concerns a mandatory subject of bargaining. We hold that it does not because the manner by which a union may achieve recognition as the representative of employees outside the bargaining unit is not a mandatory subject of bargaining. Therefore, Pall's revocation of the agreement was not an unfair labor practice.

## I. Background

Pall operates manufacturing facilities at East Hills, Glen Cove, and Port Washington, New York. Local 365 has long represented the production and maintenance employees at East Hills and Glen Cove. In 1990, before the Port Washington facility opened, the Union and Pall entered into an agreement that seemingly guaranteed the Union recognition at that facility in the event that unit work were ever to be performed there:

> The Employer agrees that in the event that it employs one (1) or more employees performing bargaining unit work at the Employer's facility in Port Washington, NY, the Employer will extend recognition over such Employees to Local 365, UAW. After extension of recognition the Employer and Union will meet to discuss the terms and conditions of employment for such employees.

*Pall Biomedical Prods. Corp.*, 331 N.L.R.B. No. 192 at 1 (Aug. 31, 2000) (*Decision*). The Board, however, following its decision in *Houston Div. of the Kroger Co.*, 219 N.L.R.B. 388, 1975 WL 5788 (1975), "construed the agreement at issue as requiring the showing of majority support before it may be properly applied," *Decision* at 3, and the parties do not challenge that aspect of the decision. So glossed, the 1990 Agreement simply requires Pall to forego its right to a Board-conducted election to determine whether the Union enjoys majority support among the employees at Port Washington.

In 1994 the Union became aware that Pall was moving to Port Washington certain laboratory equipment that had been operated by bargaining unit employees at Glen Cove. The Union also learned that Pall was hiring new employees at Port Washington for jobs that had titles and duties similar to those of jobs in the bargaining unit. The Union therefore asked to visit Port Washington in order to determine whether bargaining unit work was being performed there. Pall refused, taking the position that the 1990 Agreement was no longer in effect, alternatively giving notice of its revocation of the Agreement, and stating that "to gain representation rights ... at the Port Washington facility, [the Union] will have to go through the normal process of ... filing a representation petition with the [Board]." The Union then filed an unfair labor practice charge, which the parties settled in 1995 when Pall reaffirmed the 1990 Agreement and agreed to give the union access to the Port Washington facility.

In September, 1995 the Union twice visited Port Washington, after which it demanded recognition as the representative of the employees there and requested certain information assertedly relevant to their representation. Pall refused such

recognition and denied the Union's request for a third visit. The Union then accused Pall of "unilaterally revok[ing]" the 1990 Agreement, requested more information, claimed that Port Washington was an accretion to the existing bargaining unit, and filed a new unfair labor practice charge. At this point Pall withdrew from the 1995 settlement, "reaffirmed its previous revocation" of the 1990 Agreement, and refused to provide any information.

The Union charged, among other things, that Pall had violated §§ 8(a)(1) & (5) of the National Labor Relations Act by: (1) revoking the 1990 Agreement; (2) refusing to grant the Union access to Port Washington; and (3) refusing to provide the requested information. An Administrative Law Judge determined that, because the Agreement does not concern a mandatory subject of bargaining, Pall's revocation was not an unfair labor practice. Further, Pall's refusals to provide access and information were not unfair labor practices because the Union's demands were premised upon its having the right to enforce the Agreement. *See Decision* at 1.

The Board reversed the ALJ's determination that the Agreement does not concern a mandatory subject of bargaining and ordered Pall to provide some of the information sought by the Union. The Board affirmed the decision of the ALJ insofar as he had denied the Union access to the Port Washington facility and the rest of the information it had sought. Pall petitioned for review of the adverse aspects of the Board's order, the Board cross-applied for enforcement of its order, and the Union intervened in support of the Board.

## II. Analysis

Pall contends first that the 1990 Agreement does not concern a mandatory subject of bargaining. Pall then argues that its refusal to provide the information requested by the Union was not an unfair labor practice.

### A. Mandatory Subject of Bargaining

Section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Section 8(d) limits the scope of that obligation to bargaining about "wages, hours, and other terms and conditions of employment," 29 U.S.C. § 158(d), but that is not to say the parties may not also bargain about other, so-called permissive subjects of bargaining. *See NLRB v. Wooster Div. of Borg–Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). Section 8(d) also provides that "where there is in effect a collective bargaining contract ... the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract ...." More particularly, "an employer [is prohibited] from altering contractual terms concerning mandatory subjects of bargaining during the life of a collective bargaining agreement without the consent of the union." *Int'l Union, UAW v. NLRB*, 765 F.2d 175, 180 (D.C.Cir.1985); *see also Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 185–88, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (*PPG*). The Act does not prohibit, however, the unilateral change of terms concerning permissive subjects. *PPG*, 404 U.S. at 187–88, 92 S.Ct. 383.

Since there is no dispute that by revoking the 1990 Agreement Pall altered the terms of the Agreement without the consent of the Union, this case turns upon whether that Agreement concerns a mandatory subject of bargaining. In general, "only issues that settle an aspect of the relationship between the employer and

employees" are mandatory subjects of bargaining. *PPG*, 404 U.S. at 178, 92 S.Ct. 383. An issue arising from outside the bargaining unit may be a mandatory subject of bargaining if it "vitally affects" the terms and conditions of employment within the bargaining unit, *id.* at 179, 92 S.Ct. 383; lest the obligation to bargain be extended beyond its statutory limit, however, a proposal dealing with such a vital issue is a mandatory subject of bargaining only if it is a "direct frontal attack" upon the perceived problem. *Local 24, Int'l Bhd. of Teamsters v. Oliver*, 358 U.S. 283, 294, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959) ("The regulations embody not the 'remote and indirect approach to the subject of wages' perceived by the [lower court] but a direct frontal attack upon a problem thought to threaten the maintenance of the basic wage structure established by the collective bargaining contract."); *PPG*, 404 U.S. at 178 n. 18, 92 S.Ct. 383 (quoting *Oliver*); *Lone Star Steel Co. v. NLRB*, 639 F.2d 545, 558 (10th Cir.1980) ("[T]he Board did not properly observe the two-prong requirement of *Oliver* that in order for a subject involving employees outside the unit to be considered mandatory it must vitally affect the terms and conditions of employment or the job security of unit employees and must represent a direct frontal attack on the problem threatening such interests").

In determining that the 1990 Agreement concerns a mandatory subject of bargaining, the Board compared it to the agreements it had held to concern mandatory subjects in *Kroger Co.*, 219 N.L.R.B. 388, 1975 WL 5788 (1975), and *United Mine Workers*, 231 N.L.R.B. 573 (1977) (*Lone Star Steel*), *enf. denied*, 639 F.2d 545. *Decision* at 2–3. The Board recognized that those agreements differed from the 1990 Agreement: The agreement in *Kroger* provided that the employees in any acquired stores would become part of the existing bargaining unit. *Id.* The agreement in *Lone Star Steel* provided that the employees in any acquired facilities would be bound by the existing CBA. *Id.* at 3. While the agreement in *Lone Star Steel* did not extend the bargaining unit to include the employees in acquired facilities, it nonetheless "removed economic incentives which might have otherwise encouraged the employer to transfer the work out of the bargaining unit," and thus vitally affected the economic interests of employees in the bargaining unit. *Id.*

In contrast, the Agreement here neither includes in the bargaining unit the Port Washington employees doing bargaining unit work nor extends to them the CBA in place at East Hills and Glen Cove. The Board concluded that the Agreement nonetheless concerns a mandatory subject of bargaining because, like the agreements in *Kroger* and *Lone Star Steel*, it discourages the transfer of work out of the existing bargaining unit. *Id.* at 3–4.

The Board explained as follows why it thought the 1990 Agreement addresses the threat of work being transferred out of the bargaining unit:

> If [Pall] began performing bargaining unit work at Port Washington, the Union would be in a position to protect the interests of the existing unit employees by achieving recognition as the bargaining representative of the Port Washington employees and negotiating terms and conditions of employment for them similar to those enjoyed by East Hills and Glen Cove employees.

*Id.* at 4. If similar terms were negotiated, the Board continued, then labor costs at Port Washington would be similar to those at East Hills and Glen Cove, and Pall would have no incentive to transfer work to Port Washington. *Id.* Consequently, the Board held, the 1990 Agreement "spe-

cifically addressed" a concern that vitally affects the employees at East Hills and Glen Cove. *Id.* at 4.

■■ We review the Board's decision deferentially: "[B]ecause the classification of bargaining subjects as terms or conditions of employment is a matter concerning which the Board has special expertise, its judgment as to what is a mandatory bargaining subject is entitled to considerable deference." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 495, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979). The court must determine only "whether the Board's approach is a reasonably defensible reading of the statute, one that is consistent with the Supreme Court's decisions construing the duty to bargain thereunder." *United Food & Commercial Workers Int'l Union v. NLRB,* 880 F.2d 1422, 1432 (D.C.Cir. 1989). For the reasons given below, the decision under review fails even this relatively lenient test.

■ Pall argues that, because the 1990 Agreement does not require it to provide at Port Washington terms and conditions similar to those at its other facilities, the Agreement: (1) does not concern a subject that vitally affects the terms and conditions of unit employees, and (2) is not a direct frontal attack upon any problem facing those employees. Indeed, Pall points out, under the Agreement the parties must negotiate a CBA for the Port Washington employees from scratch. And to the extent the resulting agreement—if and when an agreement is reached—provides less generous terms than those of the CBA for the East Hills and Glen Cove employees, it will not blunt Pall's incentive to transfer work out of the bargaining unit.

The Board counters that the 1990 Agreement concerns a mandatory subject of bargaining because it protects to some extent against a transfer of work to Port Washington: "The [1990] agreement, as the Board noted [in the *Decision*], serves that goal by making it easier for the Union to seek to negotiate a contract at Port Washington with economic provisions similar to those in the contract covering the existing bargaining unit ...." For its part, the Union similarly argues that the Agreement responds to a threat to job security and therefore concerns a mandatory subject of bargaining. The Union stresses that, based upon the specific facts underlying this case, the Board reasonably concluded there was a real threat of work being transferred to Port Washington.

Although both the Board and the Union are clear in stating that the problem faced by unit employees is the potential transfer of work to Port Washington, both ultimately recognize that the 1990 Agreement does not actually address that problem. As the Board put it, the Agreement "waiv[es] the Company's right to insist on an election" and thereby "enables such negotiations to begin promptly upon the Union's presenting proof of majority status." Or as the Union states, the effect of the 1990 Agreement is to create "an expedited process for extending representation to Port Washington employees."

We think the modest reach of the 1990 Agreement goes to the heart of the matter. We may assume the Board and the Union are correct that the transfer of bargaining unit work to Port Washington would "vitally affect" the terms and conditions of employment at East Hills and Glen Cove. *See Fibreboard Paper Prods. Corp. v. NLRB,* 379 U.S. 203, 210–15, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) (contracting out unit work a mandatory subject of bargaining); *Oliver,* 358 U.S. at 293–95, 79 S.Ct. 297 (compensation of owner-drivers outside of bargaining unit a mandatory subject of bargaining in unit of non-owner drivers). But the 1990 Agreement is not a "direct frontal attack" upon that problem. The

Agreement neither prevents work from being transferred nor approximates that result by extending the CBA to Port Washington employees.

Rather, the Agreement has the single effect of allowing the Union to achieve recognition at Port Washington without winning a Board-conducted election. Yet, as we have seen (in the block quotation at 7, above) the Board treated the 1990 Agreement as the de facto equivalent of an agreement extending a CBA to employees in new facilities. An agreement providing for a CBA automatically to extend to employees in a new facility is significantly different, however, from a mere recognition agreement, which dispenses with a Board election. The former is indeed a "direct frontal attack" upon the issue of work being transferred out of the bargaining unit; the latter is at most a way of expediting recognition of the Union.

We say "at most" because whether avoiding an election would expedite significantly the onset of bargaining is itself uncertain. At oral argument counsel for the Board conceded that certification of the result of an uncontested election occurs "pretty fast" and that even disputed election issues are typically resolved in "several months." Counsel for the Union, on the other hand, said the resolution of an election dispute could take years, during which the employer would not be obligated to bargain. Counsel did not dispute, however, that an employer intent upon avoiding its obligation to bargain could equally well contest a card count done pursuant to a recognition agreement.

Even if a card count would substantially expedite recognition, the Union would still have to negotiate a CBA, which might or might not equalize labor costs between the new and the old plants. Thus, even expedited recognition is only the first step toward equalizing labor costs and thereby preventing the transfer of work. For this reason, we conclude that prescribing the manner of recognition at a new facility is not "a direct frontal attack" upon the problem of transfer of work facing employees at already organized facilities, *see Oliver*, 358 U.S. at 294, 79 S.Ct. 297; *Lone Star Steel*, 639 F.2d at 558; therefore the 1990 Agreement does not concern a mandatory subject of bargaining.

Before closing, we pause to note an argument raised by the Union but not relied upon by the Board: The Union contends that the subject of bargaining at issue in this case is not how the Union might achieve recognition but "the terms of employment of Port Washington employees." Here the Union points out that it sought "but was unable to secure the Employer's agreement" to include Port Washington employees in the existing bargaining unit and to extend the CBA to Port Washington employees. The Union goes on to argue that

the retrospective analysis of subjects of bargaining proposed by the Employer is unworkable because the parties must be able to determine in advance whether a subject is a mandatory subject of bargaining and cannot wait to see what agreement result [sic] from the bargaining.

We reject the Union's approach for three reasons. First, it is too easily manipulated; a party could make virtually any issue a mandatory subject of bargaining simply by showing that it sought more than it achieved. Second, the Supreme Court in *PPG* and *Oliver* gave no indication that negotiation history is relevant to whether an agreement concerns a mandatory subject of bargaining. Finally, we doubt seriously that an approach that determines the subject of an agreement by looking at the text of the agreement is "unworkable."

What the Union calls the "retrospective analysis"—although retrospection plays no part in it—certainly seems to have been workable in this case: the Union raised an issue—extending the CBA to Port Washington—over which the employer was obligated to bargain. The employer rejected the proposal but the Union did not resort to self-help. Instead one side or the other made a proposal—that the employer forego its right to an election—over which bargaining was merely permissive. There was no ambiguity at any stage about the parties' rights, and nothing "unworkable" about the process.

In conclusion, we hold that the decision of the Board is inconsistent with the relevant Supreme Court decisions construing the duty to bargain under the Act. Even if we assume that the transfer of work to Port Washington would "vitally affect" the East Hills and Glen Cove employees, we cannot conclude that the 1990 Agreement, which merely expedites recognition of the Union at Port Washington, is a "direct frontal attack" upon that problem. Because the Agreement is not a "direct frontal attack" upon the problem of work transfer, under *Oliver* and *PPG* it is not a mandatory subject of bargaining and, consequently, Pall did not commit an unfair labor practice by unilaterally modifying it.

## B. Refusal to Provide Information

The Board determined that the Union had a right to certain information solely because that information was deemed relevant to the enforcement and administration of the 1990 Agreement. *Decision* at 6. The Board did not explicitly state that this aspect of its decision was dependent upon its prior holding that the Agreement concerns a mandatory subject of bargaining, but that is how we understand its reasoning. So, it seems, do the parties. Neither the Board nor the Union argues that Pall's refusal to provide information was an unfair labor practice even if the Agreement concerns only a permissive subject of bargaining. On the contrary, the Union implies that it was not: "Because the agreement addressed a mandatory subject, it follows that the Union had a right to information needed to utilize the agreement." Our holding that Pall's revocation of the 1990 Agreement was not an unfair labor practice therefore requires us also to reject the Board's conclusion that Pall violated the Act when it refused to provide the information requested by the Union.

## III. Conclusion

The 1990 Agreement concerns the manner in which the Union could achieve recognition at Port Washington, which is not a mandatory subject of bargaining. It follows that neither Pall's revocation of the Agreement nor its refusal to provide the information requested by the Union was an unfair labor practice. Accordingly, Pall's petition for review is granted and the Board's application for enforcement is denied.

*So ordered.*