AMERICAN FEDERATION OF STATE, County & Municipal Employees, Council 81, Locals 247, 516, 640, 837, 879, 936, 1036, 1443, 1525, 1832, 2030, 2031, 2072, 2305, 2362, and 3514, Charging Parties–Below, Appellants,

v.

STATE of Delaware, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Department of Correction, Department of Transportation, and Office of Management and Budget, Respondents–Below, Appellees.

C.A. No. 6159–VCP.

Court of Chancery of Delaware.

Submitted: July 19, 2012.

Decided: Oct. 17, 2012.

Perry F. Goldlust, Esq., Perry F. Goldlust, P.A., Wilmington, Delaware; Attorney for Appellants.

Elio Battista, Jr., Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware; Attorney for Appellees.

## OPINION

PARSONS, Vice Chancellor.

Pending before this Court is an appeal, brought pursuant to 19 *Del. C.* § 1309, from two orders by the Public Employment Relations Board ("PERB").

The State and its agencies are parties to a number of collective bargaining agreements that provide for overtime compensation after 37.5 hours of work per week and, in some cases, a career ladder which promotes employees based on the completion of certain training programs. In 2009, in order to contain costs, the State changed the minimum for overtime hours from 37.5 to 40 hours per week and temporarily froze the career ladder.

In response, the union filed two unfair labor practice charges for, among other things, the State's failure to negotiate in good faith. A hearing officer and the executive director of PERB dismissed both charges. The union appealed those decisions to the full PERB which affirmed. The union then appealed PERB's orders to this Court.

The core issues presented in this case are: (1) whether the State can be required to bargain over nonmandatory or permissive subjects; and, if not, (2) whether the career ladder and overtime issues presented qualify as nonmandatory or permissive subjects of collective bargaining.

Because I find that the State is not required to bargain over nonmandatory subjects and that both the career ladder and overtime compensation issues here are nonmandatory subjects of collective bargaining, I deny appellants' appeal and affirm the rulings below.

## I. BACKGROUND

### A. The Parties

Appellees are the State of Delaware, the Department of Health and Social Services ("DHSS"), the Department of Corrections ("DOC"), the Department of Transportation ("DelDOT"), and the Office of Management and Budget ("OMB" and, collectively, "Appellees" or "State"). The State is a "public employer" as defined by § 1302(p) of the Public Employment Relations Act ("PERA").[1]

The Appellants include Locals 247, 516, 640, 837, 879, 936, 1036, 1443, 1525, 1832, 2030, 2031, 2072, 2305, 2362, and 3514 of the American Federation of State, County and Municipal Employees, Council 81 (collectively "Appellants" or "AFSCME"), which is an "employee organization" as defined by § 1302(i) of PERA.[2] The named Locals are the exclusive bargaining representatives, as defined by § 1302(j) of PERA, of the bargaining units and merit employees of DHSS, DOC, and DelDOT.

### B. Relevant Statutes

This case involves the interaction between PERA[3] and the Merit System of Personnel Administration (the "Merit System").[4]

In 1965, the General Assembly enacted PERA to promote "harmonious and coop-

1. 19 *Del. C.* § 1302(p); 19 *Del. C.* ch. 13.

2. *Id.* § 1302(i).

3. 19 *Del. C.* ch. 13.

4. 29 *Del. C.* ch. 59.

erative relationships between public employers and their employees."[5] PERA granted public employees the rights of organization and representation, as well as the right to engage in collective bargaining negotiations with public employers.[6]

The Merit System, which was enacted by the General Assembly one year after PERA, was intended to provide a "personnel administration based on merit principles and scientific methods governing the employees of the State in the classified service consistent with the right of public employees to organize under Chapter 13 of Title 19."[7] The Merit System includes the Merit Rules, the Merit Employee Relations Board ("MERB"), the State Personnel Commission (the "Commission"), and a grievance system for the redress of violations of the Merit Rules. Members of the classified service ("Merit Employees") include all positions of state employment unless expressly excluded by one of the twenty-five subsections of 29 *Del. C.* § 5903.

### C. Facts

#### 1. The Collective Bargaining Agreement

The State and its agencies are parties to a number of collective bargaining agreements ("CBAs") with AFSCME.[8] Of importance to this case are Articles 14 and 15 of the CBAs, which govern, respectively:

5. 19 *Del. C.* § 1301.

6. *Id.* § 1301(1)-(2).

7. 29 *Del. C.* § 5902. *See generally* 29 *Del. C.* ch. 59.

8. *See, e.g.,* Appellants' Opening Br. in Supp. of Appellants' Mot. for Summ. J. ("Appellants' Opening Br.") Ex. 2, an exemplary CBA. This CBA, which is between DelDOT's Division of Maintenance and Operations and AFSCME Council 81 and Locals 879, 1036, and 1443, is the same for all relevant purposes as the

(1) the workweek, the work day, and overtime distribution; and (2) training and a career ladder.[9] Specifically, Article 14 provides that "[t]he regular workweek for maintenance personnel shall be 37.5 hours per week."[10] The career ladder, which is addressed in Article 15, provides for the certification and promotion of employees that complete certain training programs. An employee who successfully completes a State-established training program can apply for certification, which becomes effective "on the first full pay period immediately following verification of successful completion of all promotional standard requirements."[11]

#### 2. Formation of the Government Performance Review Committee and subsequent changes

In light of fiscal constraints facing the State, on January 22, 2009, the Governor announced the kickoff of the Delaware Government Performance Review Committee ("GPRC") which sought to identify savings, create efficiencies, and increase non-tax revenues.[12] All sixteen departments in the Executive Branch of the Delaware State Government participated in the GPRC under the lead of the project's Executive Sponsors, the Director of OMB and Secretary of Finance.

On February 18, 2009, the Director of OMB sent a memorandum regarding Fis-

CBAs applicable to the other Appellant Locals with the exception of Locals 936 and 2362, which do not have any CBA provisions for a career ladder.

9. CBA arts. 14, 15.

10. *Id.* art. 14, § 1(a).

11. *Id.* art. 15, §§ 1, 2, 3, 4(a).

12. Appellants' Opening Br. Ex. 3, The Delaware Government Performance Review Executive Department Team Kickoff.

cal Year 2009 Budget Reductions to the Chief Justice of the Delaware Supreme Court, cabinet members, elected officials, and agency heads ("OMB Memorandum") announcing that "career ladder promotions are now included in the hiring freeze," which previously had been imposed by the Governor.[13] On May 12, 2009, DelDOT sent a similar memorandum, entitled Guidelines for Monitoring Employee Career Ladder Programs during the Hiring Freeze ("DelDOT Guidelines"), to employees of DelDOT announcing that career ladder promotions would be included in the hiring freeze.[14]

Also in May 2009, the GPRC issued its Preliminary GPR Report to the Governor ("Preliminary Report") with a number of proposals, including a recommendation to switch to a 40–hour workweek for the calculation of overtime.[15] Specifically, the Preliminary Report recommended modifying Merit Rules 4.13.1 and 4.13.8, which required the payment of time and one-half after 37.5 hours. Acknowledging that "80% of the affected employees are covered by collective bargaining agreements," the Preliminary Report stated that "a change in statute would take precedent over terms of those agreements." [16]

On July 1, 2009, the General Assembly passed House Bill 290 ("Fiscal Year 2010 Appropriations Act"), the epilogue to which stated "Merit Rule Chapter 4 notwithstanding: ... (i) All overtime paid at time and half will not commence until an employee has actually worked 40 hours that week." [17] The Fiscal Year 2010 Appropriations Act also declared that:

> Notwithstanding any provisions of this Act or the Delaware Code to the contrary, no provision of Chapter 4.0 of the Merit Rules shall be considered compensation for the purposes of collective bargaining and leveling up can only occur with the concurrence of the Director of the Office of Management and Budget and the Controller General. The Director of the Office of Management and Budget and Controller General, with the concurrence of the co-chairs of the Joint Finance Committee shall promulgate policies and procedures to implement this section.[18]

Finally, the Fiscal Year 2010 Appropriations Act implemented a hiring review process that required all positions, including those filled through the career ladder, to be reviewed and approved by the Director of OMB.[19]

On August 11, 2009, the Director of OMB issued a memorandum lifting the career ladder freeze, effective August 16, 2009.[20] On July 1, 2010, the Governor

13. *Id.* Ex. 4, OMB Mem.

14. *Id.* Ex. 5, DelDOT Guidelines.

15. *Id.* Ex. 6, Prelim. Report, at 13.

16. *Id.*

17. Del. H.B. 290, 145th Gen. Assem., 77 Del. Laws ch. 84, § 8(j) (2009).

18. *Id.* § 18.

19. *Id.* § 70(a) ("For Fiscal Year 2010, 29 *Del. C.* § 6529 is interpreted to include the ability to implement a hiring review process. All State agencies with the exception of Legislative, Judicial, Higher Education and school districts shall be subject to the provisions of 29 *Del. C.* § 6529 as interpreted by this section. Implementation of a hiring review process shall require all positions to be reviewed and approved by the Director of the Office of Management and Budget prior to filling. All non-cabinet agency hiring requests shall also require the review and approval of the Controller General prior to filling.").

20. Appellees' Answering Br. in Opp'n to Appellants' Mot. for Summ. J. ("Appellees' Answering Br.") Ex. A.

signed Senate Bill 310 ("Fiscal Year 2011 Appropriations Act"), which provided:

> Merit Rule Chapter 4 notwithstanding, overtime at the rate of time and one-half will commence after the employee has accrued 40 compensable hours that week. This Act makes no appropriation, nor shall any subsequent appropriation or payment be made during the fiscal year, for overtime compensation based on hours worked during Fiscal Year 2010 that did not comply with Section 8(j) of the Fiscal Year 2010 Appropriations Act.[21]

### D. Procedural History

On July 15, 2009, AFSCME filed an unfair labor practice ("ULP") charge with PERB against DHSS, DOC, and DelDOT for, among other things: (1) failing to bargain in good faith; (2) unilaterally changing the overtime rules; and (3) circumventing the collective bargaining process.[22]

The Executive Director of PERB dismissed the ULP charge in its entirety holding that overtime was an illegal subject of bargaining and any provision of a collective bargaining agreement to the contrary was void and unenforceable.[23] The Executive Director also concluded that the State did not violate its duty to bargain in good faith or engage in impermissible communications.[24]

On July 16, 2009, AFSCME and Locals 879, 1036, and 1443 filed a ULP charge with PERB against the State, OMB, and DelDOT for, among other things: (1) failing to bargain in good faith; (2) unilaterally stopping payments to employees that earned increases in compensation through the career ladder; (3) circumventing the collective bargaining process; and (4) engaging in unpermitted communications with bargaining unit employees.[25]

The PERB hearing officer dismissed this ULP charge in its entirety, concluding that: (1) career ladder advancement is a promotion not within the scope of mandatory collective bargaining; (2) the State did not violate its duty to bargain in good faith; and (3) the State did not engage in unpermitted communications.[26]

In both cases, AFSCME sought review by PERB and PERB unanimously affirmed the underlying decisions, thereby dismissing AFSCME's charges.[27] Thereafter, AFSCME filed two separate actions seeking review in this Court pursuant to 19 *Del. C.* § 1309(a),[28] asserting that PERB erred as a matter of law and that the decisions were not supported by sub-

---

21. Del. S.B. 310, 145th Gen. Assem., 72 Del. Laws ch. 327, § 8(j) (2010).

22. *AFSCME, Council 81, Local 247 v. State Dep't of Health & Soc. Servs.*, ULP No. 09–07–693 (Del. Pub. Employment Relations Bd.2009).

23. *Id.* (Exec. Dir., Del. Pub. Employment Relations Bd., Feb. 22, 2009) (order).

24. *Id.*

25. *AFSCME, Council 81, Local 879 v. State*, ULP No. 09–07–694 (Del. Pub. Employment Relations Bd.2009).

26. *Id.* (Hr'g Officer, Del. Pub. Employment Relations Bd., Nov. 15, 2010) (order).

27. *Id.* (Del. Pub. Employment Relations Bd. Nov. 15, 2010); *AFSCME, Council 81, Local 247 v. State Dep't of Health & Soc. Servs.*, ULP No. 09–07–693 (Del. Pub. Employment Relations Bd. Feb. 22, 2009).

28. 19 *Del. C.* § 1309(a) ("Any party adversely affected by a decision of the Board under § 1308 or § 1315 of this title may appeal that decision to the Chancery Court of this State. Such an appeal must be filed within 15 days of the date upon which the decision was rendered and shall not automatically act as a stay.").

stantial evidence.[29] I later consolidated those two actions pursuant to Court of Chancery Rule 42.[30]

On March 30, 2012, AFSCME moved for summary judgment in their favor. Having considered the parties' briefing and oral argument, this Opinion constitutes my ruling on AFSCME's motion.

## E. Parties' Contentions

AFSCME argues that they are entitled to summary judgment because: (1) state merit system employees have a constitutionally protected property right to bargain collectively; (2) both the career ladder and overtime compensation subjects are terms and conditions of employment and, thus, are not prohibited subjects of bargaining; and (3) the State failed in their obligation to bargain in good faith by engaging in unilateral action to alter the terms and conditions of employment.

The State seeks an order denying AFSCME's Motion for Summary Judgment and dismissing the consolidated appeals. The State contends that they are entitled to judgment as a matter of law regarding the career ladder appeal because: (1) career ladder promotions are not mandatory subjects of bargaining; (2) unilateral modification of a nonmandatory subject of bargaining does not constitute a ULP; (3) the career ladder is within the State's exclusive authority; (4) the CBA does not govern career ladder promotions; and (5) the Fiscal Year 2010 Appropriations Act supersedes the CBA. In addition, the State argues that they are entitled to judgment as a matter of law regarding the overtime compensation appeal because: (1) overtime compensation is outside the scope of bargaining for merit employees; (2) the State was bound by the Delaware Constitution to implement Section 8(j) of the Fiscal Year 2010 Appropriations Act; and (3) the General Assembly has the sole authority to appropriate funds, including overtime compensation. Although the State also raised two mootness arguments in their answering brief, they effectively dropped those arguments at oral argument.[31]

## II. ANALYSIS

### A. Standard of Review

■ "On appeal of an administrative agency's adjudication, this Court's sole function is to determine whether the Board's decision is supported by substantial evidence and is free from legal error."[32] In reviewing a decision of PERB, the Court of Chancery is bound to accept

---

**29.** *See* Notice of Appeal, C.A. No. 6327–VCP, Docket Item No. 1; Notice of Appeal of PERB Decision, C.A. No. 6159–VCP, Docket Item No. 1.

**30.** *AFSCME Council 81, Local 879 v. State,* 2011 WL 6945653 (Del.Ch. Dec. 29, 2011).

**31.** The State effectively abandoned their mootness argument as to the career ladder by conceding that the issue was not moot "[w]ith respect to whether the [S]tate can do this again." Tr. 23–24. In regard to overtime, the State acknowledged that, while the remedy might be moot, "whether [the State] has

the authority to change overtime classifications" was not moot. Tr. 26–27. Thus, on the issue of whether the State committed a ULP, a live controversy still exists. *See generally Gen. Motors Corp. v. New Castle Cty.,* 701 A.2d 819 (Del.1997). There still might be a mootness question regarding AFSCME's claims for some form of monetary remedy for the alleged ULPs. I need not address that issue, however, because I have concluded that the State did not commit a ULP.

**32.** *Angstadt v. Red Clay Consol. Sch. Dist.,* 4 A.3d 382, 387 (Del.2010).

as correct all relevant factual conclusions that are supported in the record by "substantial evidence."[33] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34] In this case, however, PERB based all of its decisions on, and drew factual inferences from, stipulated paper records.[35] Furthermore, because the parties have stipulated to the relevant facts, the issues presented on this appeal are purely legal and subject to this Court's *de novo* review.[36] In undertaking such a review, however, the Court accords due weight to PERB's "expertise and specialized competence" in labor law.[37]

■ "Delaware courts do not accord agency interpretations of the statutes which they administer so-called *Chevron*[38] deference, as do federal courts in reviewing administrative decisions under the federal Administrative Procedures Act."[39] In interpreting a statute, Delaware courts must "ascertain and give effect to the intent of the legislature."[40] "If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[41] "The fact that the parties disagree about the meaning of the statute does not create ambiguity."[42] Rather, a statute is ambiguous only if it "is reasonably susceptible of different interpretations,"[43] or "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[44] If a statute is ambiguous, however, courts should consider the statute as a whole, rather than in parts, and read each section in light of all others to produce a harmonious whole.[45] Courts also should ascribe a purpose to the General Assembly's use of statutory language, and avoid construing it as surplusage, if reasonably possible.[46]

**33.** See Bd. of Educ. of Colonial Sch. Dist. v. Colonial Educ. Ass'n, 1996 WL 104231, at *4 (Del.Ch. Feb. 28, 1996), aff'd, 685 A.2d 361 (Del.1996).

**34.** Breeding v. Contractors–One–Inc., 549 A.2d 1102, 1104 (Del.1988).

**35.** Del. State Univ. v. Del. State Univ. Chapter of the Am. Ass'n of Univ. Professors (DSU II ), 2002 WL 385350, at *3 (Del.Ch. Feb. 26, 2002), aff'd, 813 A.2d 1133 (Del.2003).

**36.** See 29 Del. C. § 10142(c) ("The appeal shall be on the record without a trial de novo."); Fraternal Order of Police, Lodge No. 15 v. City of Dover, 1999 WL 1204840, at *2 (Del.Ch. Dec. 10, 1999), aff'd, 755 A.2d 388 (Del.2000) (TABLE); Colonial Educ. Ass'n, 1996 WL 104231, at *4.

**37.** See Fraternal Order of Police, Lodge No. 15, 1999 WL 1204840, at *2; Seaford Bd. of Educ. v. Seaford Educ. Ass'n, 1988 WL 8773, at *1 (Del.Ch. Feb. 5, 1988).

**38.** Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that an agency's interpretation of a statute that it administers is entitled to deference so long as Congress has not directly spoken on that issue).

**39.** Del. Comp. Rating Bureau, Inc. v. Ins. Comm'r, 2009 WL 2366009 (Del.Ch. July 24, 2009).

**40.** In re Adoption of Swanson, 623 A.2d 1095, 1096 (Del.1993).

**41.** Ins. Comm'r of State of Del. v. Sun Life Assurance Co. of Can. (U.S.), 21 A.3d 15, 20 (Del.2011).

**42.** Chase Alexa, LLC v. Kent Cty. Levy Ct., 991 A.2d 1148, 1151 (Del.2010).

**43.** Centaur P'rs, IV v. Nat'l Intergroup, Inc., 582 A.2d 923, 927 (Del.1990).

**44.** LeVan v. Independence Mall, Inc., 940 A.2d 929, 933 (Del.2007).

**45.** Taylor v. Diamond State Port Corp., 14 A.3d 536, 538 (Del.2011).

**46.** Id.

## B. What Topics Are Subject to Collective Bargaining?

AFSCME asserts that the State committed a ULP by violating 19 *Del. C.* § 1307(a)(2), (3), (5), and (6). According to those statutory provisions,

> It is an unfair labor practice for a public employer or its designated representative to do any of the following:
>
> . . . .
>
> (2) Dominate, interfere with or assist in the formation, existence or administration of any labor organization.
>
> (3) Encourage or discourage membership in any employee organization by discrimination in regard to hiring, tenure or other *terms and conditions of employment.*
>
> . . . .
>
> (5) Refuse to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, *except with respect to a discretionary subject.*
>
> (6) Refuse or fail to comply with any provision of this chapter or with rules and regulations established by the Board pursuant to its responsibility to regulate the conduct of collective bargaining under this chapter . . . . [47]

Therefore, in order for AFSCME to prove that the State committed a ULP, they must demonstrate either that one or both of the subject matters in question—the career ladder and overtime compensation—are mandatory subjects of collective bargaining, or, if not, that the State can be forced to bargain over nonmandatory subjects.

■ Section 1305 of Title 19 of the Delaware Code makes explicit that public employers are not required to bargain on discretionary subjects:

> A public employer is *not required to engage in collective bargaining on* matters of inherent managerial policy, which include, but are not limited to, such areas of *discretion* or policy as the functions and programs of the public employer, its standards of services, overall budget, utilization of technology, the organizational structure and staffing levels and the selection and direction of personnel.[48]

■ As part of my analysis, I also consider whether employers are required to bargain over nonmandatory subjects under analogous federal law. "Delaware courts turn to federal case law decided under the [National Labor Relations Act or] NLRA for guidance in construing Delaware's similar statutory provisions."[49] The NLRA contains a parallel provision to PERA making it a ULP for an employer "to refuse to bargain collectively with the representatives of his employees."[50] Moreover, employers are required to "confer in good faith with respect to wages, hours, and other terms and conditions of employment."[51] In construing these provisions, the United States Court of Appeals for the District of Columbia Circuit noted that:

> labor law are similar to those that arise under [federal labor law], Delaware could be expected to consider and, in all likelihood, follow federal law.").

**47.** 19 *Del. C.* § 1307(a) (emphasis added).

**48.** 19 *Del. C.* § 1305 (emphasis added).

**49.** *Del. State Univ. v. Del. State Univ. Chapter of Am. Ass'n of Univ. Professors (DSU I )*, 2000 WL 33521111, at *12 (Del.Ch. May 16, 2000); *see also Cofrancesco v. City of Wilmington,* 419 F.Supp. 109, 111 (D.Del.1976) ("In cases where the problems raised under Delaware's

**50.** 29 U.S.C. § 158(a)(5).

**51.** *Id.* § 158(d).

Section 8(d) limits the scope of that obligation to bargaining about 'wages, hours, and other terms and conditions of employment,' 29 U.S.C. § 158(d), but that is not to say the parties may not also bargain about other, so-called permissive subjects of bargaining.... *The Act does not prohibit,* however, *the unilateral change of terms concerning permissive subjects.*[52]

Similarly, in *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,*[53] the United States Supreme Court held that: " 'modification' is a prohibited unfair labor practice only when it changes a term that is a mandatory rather than a permissive subject of bargaining." [54] Thus, under federal law a unilateral change to permissive subjects does not qualify as a ULP.[55]

■ For these reasons, I conclude that the State is not required to negotiate over nonmandatory or discretionary subjects.[56] Therefore, I turn next to the question of what qualifies as a nonmandatory subject.

Section 5938(c) of Title 29 of the Delaware Code provides:

The rules adopted or amended by the Board under the following sections shall apply to any employee in the classified service represented by an exclusive bargaining representative or covered by a collective bargaining agreement under Chapter 13 of Title 19, except in the case of collective bargaining agreements reached pursuant to § 1311A of Title 19: §§ 5915 through 5921, 5933, 5935 and 5937 of this title.

The State contends that 29 *Del. C.* § 5938(c) excludes the subjects at issue here from the scope of mandatory collective bargaining based on the belief that Section 5938 expresses the General Assembly's intent to reserve to the State the exclusive authority to govern the excepted sections (*i.e.,* §§ 5915 through 5921, 5933, 5935 and 5937). In other words, the Merit Rules would be controlling over these topics and collective bargaining as to them would not be authorized. The State also asserts that the topics at issue—overtime and the career ladder—fall within the ex-

**52.** *Pall Corp. v. NLRB,* 275 F.3d 116, 119 (D.C.Cir.2002) (emphasis added).

**53.** 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971).

**54.** *Id.* at 185, 92 S.Ct. 383. In addition, the Court noted that "[t]he remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract ... not in an unfair-labor-practice proceeding." *Id.* at 187, 92 S.Ct. 383.

**55.** The Court in *DSU I,* however, held "that neither Delaware courts nor the PERB should blindly follow federal precedent without first examining whether the NLRA practice in question would in fact promote the goals of Delaware's public employment statutes." *DSU I,* 2000 WL 33521111, at *12.

**56.** A "discretionary subject" is defined by 19 *Del. C.* § 1302(h) as "any subject [1] covered by merit rules which apply pursuant to

§ 5938(c) of Title 29, and [2] which merit rules have been waived by statute." For the purposes of this case, if the first part of this definition is met, the subject matter is a nonmandatory subject of collective bargaining, and, therefore, cannot support a ULP. As a matter of logic, the same conclusion would follow whether or not the subject also met the second prong because otherwise it would lead to absurd results. The General Assembly could not have intended to not require collective bargaining on subjects where Merit Rules apply by statute, while requiring collective bargaining over such subjects where Merit Rules had been waived by statute. Because neither of the parties discussed the second prong of the definition of discretionary subject in their briefs and courts read statutes so as to avoid absurd results, this Court will only examine whether the subject matter in question was covered by Merit Rules which apply pursuant to § 5938(c). *See Reddy v. PMA Ins. Co.,* 20 A.3d 1281, 1287–89 (Del.2011) (discussing the "absurd result" principle).

cepted sections. Thus, under the State's interpretation, both overtime and the career ladder are outside of the general, mandatory scope of bargaining for Merit Employees.

Relying primarily on an opinion by Vice Chancellor Short in *State v. AFSCME, AFL–CIO Local 1726* ("*Local 1726*"),[57] AFSCME argues that 29 *Del. C.* § 5938 does not limit the subjects of bargaining. In *Local 1726*, Vice Chancellor Short addressed whether a union could enforce a provision in a collective bargaining agreement with DHSS that provided for the payment of the full cost of family health insurance coverage.[58] The State argued that the provision was unenforceable because it was beyond the scope of collective bargaining as authorized by the enabling statute and limited by the Merit System. The Court rejected the State's argument, holding that Section 5938 was enacted "not to define the scope of collective bargaining, but to *reconcile* the merit system provisions . . . with the collective bargaining provisions."[59] In other words, rather than limit the scope of collective bargaining, Section 5938 "provide[d] a set of rules to resolve any conflicting provisions which may arise between Merit Rules and negotiated agreements."[60]

The State, on the other hand, cites *Laborers' International Union of North America, Local 1029 v. State of Delaware*[61] for the proposition that Section 5938 reserves to the State the exclusive authority to govern the excepted sections. In *Laborers' International*, the State refused to bargain on six proposals involving, among other things, holiday pay, pay for working double shifts, sick leave accumulation, and hazardous duty pay. The union sought a mandatory injunction to compel the State to bargain on those proposals. In defense of its actions, the State argued that collective bargaining on those subjects was precluded by 29 *Del. C.* ch. 59. The Court agreed, holding:

> The categories covered by the excepted sections, and as to which *the merit system rules are controlling and collective bargaining is unauthorized,* are as follows according to their statutory catchlines: "Classification, uniformity; appeal of classifications." (§ 5915); "Uniform pay plan" (§ 5916); "Competitive examinations" (§ 5917); "Promotions" (§ 5918); "Eligibility lists" (§ 5919); "Rejection for unfitness" (§ 5920); "Appointment of highest ranking candidates" (§ 5921); "Leaves" (§ 5933); "Veterans' preference" (§ 5935); and "Preference for residents" (§ 5937).

> Therefore, if the six proposals of the Union fall within the limitations of Section 5938(c), they are not proper subjects for collective bargaining and the [State] *cannot be compelled to bargain on them.*[62]

In *Laborers' International*, the Court of Chancery also found that 19 *Del. C.* ch. 13 (which established the right of employees to collectively bargain) and 29 *Del. C.* ch. 59 (which established the Merit System) conflicted with one another. Based on his examination of these statutes and their legislative history, Chancellor Brown concluded that "where there is uncertainty as to areas where the General Assembly has indicated a clear intention to deny collec-

**57.** 298 A.2d 362 (Del.Ch.1972).

**58.** *Id.* at 362.

**59.** *Id.* at 364–65 (emphasis added).

**60.** *Id.* at 365.

**61.** 310 A.2d 664 (Del.Ch.1973), *aff'd,* 314 A.2d 919 (Del.1974).

**62.** *Id.* at 667 (emphasis added).

tive bargaining, any doubt should be resolved in favor of the Merit System."[63] As the Court noted, the purpose of the Merit System statute was to prevent "employees of the same classifications [from] receiving different compensation ... based solely upon the agency they work for and the success of their collective bargaining representatives."[64] The Chancellor refused, therefore, to "expand the scope of collective bargaining so as to effectively encroach upon rules adopted pursuant to the statutes protected by Section 5938(c) without clear legislative direction to do so."[65]

Several subsequent opinions have recognized that *Laborers' International* modified *Local 1726*. For example, in *Delaware Nurses Association v. State*,[66] the Court acknowledged that *Laborers' International* construed one of the excepted sections "to authorize a 'general rule-making power' incident to the [excepted section]."[67] Thus, a "Court must decide whether [the subjects] at issue are components of" the excepted sections in Section 5938(c).[68]

■ The conclusion reached in *Laborers' International* informs the disposition

of this case. There is no need, however, to examine legislative history to decide the issues here. "A Court should not resort to legislative history in interpreting a statute where statutory language provides unambiguously an answer to the question at hand."[69] The stated purpose of the Merit System is "to establish for this State a system of personnel administration based on merit principles and scientific methods governing the employees of the State in the classified service consistent with the right of public employees to organize under Chapter 13 of Title 19."[70] In referencing merit principles and scientific methods, the General Assembly made clear its intent to create uniform standards for the classification of state Merit Employees. In furtherance of that goal, Section 5938(c) excepts from collective bargaining certain subject matter where the Merit Rules are intended to be controlling. AFSCME invites this Court to construe that subject matter narrowly. Doing so, however, would impede the Merit System's ability to achieve uniformity.[71]

With these principles—and those of *Laborers' International*—in mind, this Court must determine whether the career ladder

63. *Id.*

64. *Id.*

65. *Id.*

66. 1984 WL 484508 (Del.Super. July 30, 1984).

67. *See id.* at *1–2 (citing *Laborers' Int'l*, 310 A.2d at 668); *see also Delaware State Troopers' Lodge Fraternal Order of Police, Lodge # 6 v. State*, 1984 WL 8217 (Del.Ch. June 13, 1984).

68. *Del. Nurses Ass'n*, 1984 WL 484508, at *2.

69. *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1287 (Del.1994) (citing *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del.

1993) ("In the absence of any ambiguity, the language of the statute must be viewed as conclusive of the legislative intent.... The judicial role is then limited to an application of the literal meaning of the words.")).

70. 29 *Del. C.* § 5902.

71. This interpretation is not inconsistent with the Court's conclusion in *Local 1726* that Section 5938(c) was intended to resolve conflicts between the Merit System provisions and the collective bargaining provisions. *Laborer's Intern. Union of North America v. State*, 310 A.2d 664, 665 (Del.Ch.1973), *aff'd*, 314 A.2d 919 (Del.1974). *Consistent* with that opinion, this interpretation does not limit the scope of collective bargaining; rather, it construes the excepted subjects so as to ensure that the Merit System achieves its stated purpose.

and overtime provisions conflict with a "general rule-making authority" incident to the excepted sections in Section 5938(c), and, therefore, are not subject to collective bargaining. I now address each of those issues.

### 1. Is the career ladder a promotion?

 The State contends that the career ladder is a promotion, as defined by Section 5918, and, thus, is not a subject of collective bargaining. AFSCME, on the other hand, argues that the career ladder is a form of compensation or training, and, thus, is a mandatory subject of bargaining. To determine whether the career ladder is a promotion, I must determine how promotion is defined under the Merit System and then decide whether the career ladder provided for in Section 15 of the CBAs meets that definition.

Section 5918, titled "Promotions," states: "The rules shall provide for promotions, giving consideration to the applicant's qualifications, performance record, seniority, conduct and, where practicable, to the results of competitive examination. Vacancies shall be filled by promotion whenever practicable and in the best interest of the classified service." [72]

As to the career ladder, AFSCME alleges that the State violated Article 15 of the CBA entitled "Training." Notably, this Article provides that, in terms of the career ladder, "[*p* ]*romotion* will become effective on the first day of the first full pay period immediately following verification of successful completion of all promotional

standard requirements." [73] The career ladder is further defined by the Merit Rules adopted pursuant to 29 *Del. C.* § 5914 as "a hierarchy of classes within a class series, established and approved by the director, which permits employee movement along a career path without competition upon meeting all *promotional* standards." [74] Thus, under both the CBA and the Merit Rules, career ladder advancement is a form of promotion.

This conclusion also comports with the plain meaning of promotion. The term "promotion" is defined in Merriam–Webster's Dictionary as "the act or fact of being raised in position or rank." [75] The career ladder satisfies this definition in that it raises an employee to a new position based on the acquisition of additional training and certification.

Because the career ladder meets the definition of promotion under any relevant standard, and promotions are excepted under 29 *Del. C.* § 5938(c), the State could not have violated 19 *Del. C.* § 1307(a) by refusing to negotiate regarding the career ladder or unilaterally making changes to it.

### 2. Is overtime a form of compensation?

 AFSCME also argues that the State unilaterally made changes to Section 15 of the CBA regarding overtime compensation in violation of 19 *Del. C.* § 1307(a). The State, on the other hand, contends that overtime pay is contemplated by the

**72.** 29 *Del. C.* § 5918.

**73.** CBA art. 15, § 4(a) (emphasis added).

**74.** *See* 19 *Del. Admin. C.* § 3001–2 (emphasis added). Section 5914 of Title 29 states: "The Director shall prepare and submit to the Board proposed rules covering the classified service. The rules shall be reviewed by the Board at a public hearing held following pub-

lic notice. The rules, as proposed by the Director, shall become final upon the completion of the public hearing, unless rejected by a majority of the members appointed to the Board."

**75.** *Merriam–Webster's Collegiate Dictionary* (11th ed.2004).

"Uniform Pay Plan,"[76] and, therefore, is excepted from the mandatory scope of bargaining under 5938(c).[77]

In *Laborers' International*, the Court held that provisions "adopted pursuant to Section 5916" (the "Uniform Pay Plan") are "not proper subjects for collective bargaining."[78] There, the Court addressed whether premium pay—specifically, premium pay for holidays worked and double shifts—was excepted from mandatory bargaining by Delaware's Merit System. The Court held that because the Merit Rule in question had been adopted "as part of the general rule-making power incident to the formulation of a pay plan," the State could not be required to negotiate on the premium pay proposal.[79]

As in *Laborers' International*, the subject matter here involves premium pay—specifically, premium pay for overtime worked. Merit Rule 4.13, which specifies the eligibility and pay rate for overtime services, is part of Merit Rule 4, entitled "Pay Plan."[80] Using the same reasoning applied in *Laborers' International*, it is reasonable to infer that Merit Rule 4.13 was adopted pursuant to Section 5916. As the Court noted in *Laborers' International*:

> [I]t would seem that in order to arrive at a realistic pay plan there would have to be certain understandings and limitations as to such wage related matters as extra duty, pay, etc. Section 5916 does not limit the [State Personnel] Commission to the adoption of a pay plan per se, but rather authorizes it to adopt such rules as may be necessary to provide for the overall pay plan.[81]

The adoption of the overtime provision at issue in this case was a necessary part of the pay plan scheme because it provided for "additional compensation for work performed in excess of the standard work week."[82] Therefore, that provision "could reasonably have been adopted pursuant to Section 5916 as part of the general rule-making power incident to the formulation of a pay plan."[83]

By including the Uniform Pay Plan of Section 5916 in the Merit System, the General Assembly made clear that compensation for Merit Employees is outside of the mandatory scope of collective bargaining. Because premium pay was

---

76. 29 *Del. C.* § 5916. This Section provides in relevant part:

> (a) The rules shall provide for a pay plan for all employees in the classified service.... Nothing shall be contained in the pay plan except the salary and wage schedule and each employee in the classified service shall be paid at the rate set forth in the pay plan for the position classification....
> ....
> (c) No state employee whose salary is designated in the annual appropriations act shall receive compensation, whether in wages, salary, wages-in-kind, food allotment bonuses or overtime, from agencies of this State in excess of said salary regardless of the source of funds involved....

There are three exceptions mentioned at the end of Section 5916, but none of them are relevant here.

77. Section 5938(c) provides an exception to the exception for agreements reached pursuant to 19 *Del. C.* § 1311A. None of the agreements in question, however, were reached pursuant to Section 1311A. *See* Post–Hr'g Br. on Behalf of the State 5 (ULP No. 09–07–693).

78. *Laborers' Int'l Union of N. Am., Local 1029 v. State*, 310 A.2d 664, 667 (Del. Ch.1973).

79. *Id.* at 668.

80. *See* Merit Rule 4; *see also* 19 *Del. Admin. C.* § 3001–5.0.

81. *Laborers' Int'l*, 310 A.2d at 668.

82. *Id.*

83. *Id.*

adopted pursuant to that Section, the facts of record here provide no basis for concluding that the State violated Section 1307(a) of PERA by making the challenged changes to overtime compensation.

### C. Does the Fiscal 2010 Appropriations Act Supersede the CBA?

█ In the alternative, the State argues that Sections 14 and 15 of the CBA "cannot override the Fiscal Year 2010 Appropriations Act and therefore become[ ] invalid, unenforceable, and contrary to law." [84] In support of this argument, the State relies on 19 *Del. C.* §§ 1313(e) and 1302(t). Section 1302(t) provides an exception to the definition of "terms and conditions" of employment that states: "such term shall not include those matters determined by this chapter or any other law of the State to be within the exclusive prerogative of the public employer." Section 1313(e) states: "[n]o collective bargaining agreement shall be valid or enforceable if its implementation would be inconsistent with any statutory limitation on the public employer's funds, spending or budget, or would otherwise be contrary to law."

The State argues that three separate sections of the Fiscal Year 2010 Appropriations Act supersede Sections 14 and 15 of the CBA and render those sections invalid

and unenforceable. Specifically, the State cites to the following sections of the Act: Section 8(j), which limits overtime eligibility to hours worked over 40 hours per week; Section 18, which provides that no provision of Chapter 4.0 of the Merit Rules should be considered compensation for the purposes of collective bargaining; and Section 70(a), which implements a hiring review process for all positions. [85]

With the canons of statutory interpretation previously discussed in mind, [86] I conclude that, under the plain language of Section 1313(e), any agreements which are "inconsistent with any statutory limitation on the public employer's funds" or "contrary to law" are unenforceable. At least one other court, in construing identical language contained in the Public School Employment Relations Act, has reached the same conclusion, reasoning that "this section precludes the enforceability of contractual provisions which would be contrary to law and, therefore, establishes illegal subjects of bargaining." [87] Here, the General Assembly, in enacting the Fiscal Year 2010 Appropriations Act, created irreconcilable conflicts with Sections 14 and 15 of the CBA. Specifically, the Act limited overtime eligibility and implemented a hiring review process in direct opposition to the terms of Sections 14 and 15. [88]

---

84. *See* Appellees' Answering Br. 19; *see also* Appellees' Answering Br. 22 ("The General Assembly's modification of Merit employee overtime eligibility standards, and its express removal of overtime compensation from the authorized scope of bargaining means—by law—that overtime pay is not a mandatory subject of bargaining.... [T]here is no authority for the position that the terms and conditions of employment in a collective bargaining agreement can be contrary to prevailing law.").

85. Del. H.B. 290, 145th Gen. Assem., 77 Del. Laws ch. 84 §§ 8(j), 18, 70(a).

86. *See supra* Part II.A.

87. *Del. State Educ. Ass'n v. Bd. of Educ. of State*, 1988 WL 67793, at *1 (Del.Super. June 24, 1988) (construing 14 *Del. C.* § 4013(e)); *see also City of Wilmington. v. Fraternal Order of Police, Lodge 1*, D.S. No. 02–10–369, at 2870 (Del. Pub. Employment Relations Bd. July 25, 2003) ("Where parties reach an agreement which includes a provision which is contrary to law, that provision is unenforceable.").

88. AFSCME disputes the State's view that Section 70(a) granted the State the authority to freeze the career ladder. Appellants' Reply Br. in Supp. of Appellants' Mot. for Summ. J. ("Appellants' Reply Br.") 7. Section 70(a) ref-

As the plain language of Section 1313(e) indicates, these conflicts render the provisions of the CBA invalid and unenforceable.

Because Section 1313(e) renders any conflicting portions of Sections 14 and 15 of the CBA invalid and unenforceable, AFSCME has not demonstrated that the State committed a ULP by virtue of any of the alleged violations of its duties under Section 1307(a).

### D. The Authority of OMB, the Governor, and the General Assembly

In their brief, AFSCME raises a number of arguments challenging the authority of the OMB, whether it purported to act as an agent of the Governor or the General Assembly, to modify the terms of the CBA. Specifically, AFSCME argues that the OMB is an agency within the Governor's office, and that the Governor did not authorize—at least not in writing—OMB to engage in the actions in question.[89] In the alternative, AFSCME argues that the General Assembly could not have conferred upon OMB the authority to engage in these actions.[90] These arguments were presented to PERB, and PERB concluded that "questions of the constitutional authority of OMB, vis-à-vis

the Governor and General Assembly, were not necessary for resolution of this charge and are better left to resolution in an appropriate judicial forum."[91] In reviewing PERB's determination, this "Court's sole function is to determine whether the Board's decision is supported by substantial evidence and is free from legal error."[92]

I concur with the determination reached by PERB. The arguments presented by AFSCME are unrelated to their ULP charges, which are premised on the theory that the State violated Section 1307(a) of PERA. As previously discussed, to find that the State committed a ULP, the deciding tribunal first must decide that Section 1307 applies to the underlying subject matter. If the subject matter is not a mandatory subject of bargaining, then there is no basis for finding that the employer violated its duty to bargain in good faith under PERA. Moreover, under Section 1308, PERB's jurisdiction is limited to determining ULPs under Section 1307.[93] Because I conclude that the career ladder and overtime issues presented in this case are not mandatory subjects of collective bargaining, they could not have given rise to a violation of 19 *Del. C.* § 1307(a). Accordingly, the issues regarding the author-

---

erences 29 *Del. C.* § 6529, which states in relevant part:

> The Director of the Office of Management and Budget is hereby empowered and directed to exercise, subject to the approval of the Governor, such control over the monthly and/or quarterly rates of agency expenditures of funds appropriated to such agency as the Director of the Office of Management and Budget may deem necessary to assure the effective and continuous operation of the various agencies during the fiscal year.

Therefore, even if AFSCME were correct and Section 70(a) of the Fiscal Year 2010 Appropriations Act did not grant the State the authority to implement the hiring freeze, 29 *Del. C.* § 6529 did.

**89.** Appellants' Reply Br. 5–8.

**90.** *See supra* note 88.

**91.** *AFSCME, Council 81, Local 879 v. State,* ULP No. 09–07–694 (Del. Pub. Employment Relations Bd. Nov. 15, 2010).

**92.** *Angstadt v. Red Clay Consol. Sch. Dist.,* 4 A.3d 382, 387 (Del.2010).

**93.** 19 *Del. C.* § 1308 ("The Board is empowered and directed to prevent any unfair labor practice described in § 1307(a) and (b) of this title and to issue appropriate remedial orders.").

ity of OMB are beyond the scope of this appeal.

### III. CONCLUSION

For the foregoing reasons, I conclude that PERB correctly found that the career ladder and overtime matters complained of by AFSCME were not mandatory subjects of bargaining, and that, therefore, the State did not violate 19 *Del. C.* § 1307, as alleged. Thus, the judgments of the Dela-ware Public Employment Relations Board are affirmed.

**IT IS SO ORDERED.**

