# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1590, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) | C.A. No. 9830-VCP |
| CITY OF WILMINGTON, | ) ) ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 22, 2015
Date Decided: May 15, 2015

Jeffrey M. Weiner, Esq., LAW OFFICES OF JEFFREY M. WEINER PA, Wilmington, Delaware; *Attorney for Appellant International Association of Firefighters, Local 1590.*

Tara M. DiRocco, Esq., CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware; *Attorney for Appellee City of Wilmington.*

**PARSONS, Vice Chancellor.**

This action is an appeal from a decision of the Public Employee Relations Board ("PERB"). The dispute is over whether the City of Wilmington (the "City") and the International Association of Firefighters, Local 1590 (the "IAFF") collectively bargained for the City to pay extra holiday compensation to all firefighters for Mayor-declared holidays or only to those firefighters who actually worked on the Mayor-declared holidays.

In 2013, when the City refused to pay additional holiday pay to those firefighters who did not work on a Mayor-declared holiday, the IAFF filed an unfair labor practices charge against the City with PERB. After a hearing, PERB's Executive Director found that the collective bargaining agreement was unambiguous and that the agreement neither required nor addressed whether the City must compensate firefighters who did not work on a Mayor-declared holiday. The full PERB then reviewed the decision and affirmed, after which the IAFF filed this appeal.

Having considered the evidentiary record and papers in this matter, I conclude that PERB's decision is not supported by substantial evidence and is contrary to law. Specifically, I conclude that the collective bargaining agreement requires the City to pay eight hours of additional pay to those firefighters who were not scheduled to work on the Mayor-declared holiday and were not otherwise disqualified from receiving such compensation.

1

# I. BACKGROUND

## A. Facts[1]

### 1. The Mayor declares a holiday

On December 17, 2012, Wilmington Mayor James M. Baker announced that Monday, December 24, 2012, would be a Mayor-declared holiday. Accordingly, the Mayor issued Executive Order 2012-4, which provided:

> On Monday, December 24, 2012, all regular employees who are considered non-essential (i.e., not required to work by their commissioner or Department Head) shall be excused from work with pay; and
>
> Employees who are required to work on Monday, December 24, 2012, shall be appropriately compensated in accordance with Chapter 40 of Wilmington City Code and/or their respective collective bargaining agreements . . . .[2]

Thus, for most civilian employees—*i.e.*, non-collective bargaining employees—December 24 was a day off with holiday pay regardless of whether they were scheduled

---

[1] The underlying facts are not in dispute. City's Answering Br. 4. The factual background, unless otherwise noted, is drawn from the record created in the PERB proceedings. Citations to the record are represented by "R. #", where "#" is the page reference. When appropriate, documents with internal pagination will include a citation to both the internal pagination and the record, *e.g.*, "PERB Decision #, R. #."

[2] R. 670.

to work that day.[3]  If a civilian employee did work on December 24, she earned holiday pay plus twice her normal hourly rate for the hours worked.[4]

In contrast, firefighters collectively bargain with the City over their wages and terms of employment.  Article 5 of the IAFF's collective bargaining agreement ("CBA")[5] covers holiday pay.  The first paragraph of Section 5 provides:

> The following and such other days as the Mayor may designate shall be holidays with pay: New Year's Day; Martin Luther King Day; President's Day; Good Friday; Memorial Day; the Fourth day of July, known as Independence Day; the first Monday in September, known as Labor Day; Veteran's Day; Thanksgiving Day, whenever proclaimed; Christmas Day; and the day of the general election as it biennially occurs.[6]

The second paragraph of Section 5.1 provides for repercussions for those firefighters who have unexcused absences on or around the time of the holiday.  That paragraph states in pertinent part:

> Employees shall not be paid for a holiday (8 hours pay) if they are absent from work on the employee's last scheduled workday before the holiday, the holiday (if scheduled to work for the holiday), or the employee's next scheduled workday following the holiday unless excused . . . .  The stipulations in

---

[3]  Wilm. C. § 40-332(b) ("Any eligible employee whose regularly scheduled day off falls on a holiday shall be entitled to eight hours of straight time holiday pay.").

[4]  *Id.* § 40-332(c) ("Any eligible employee who is required to work on a [designated or Mayor-declared holiday] shall be compensated at double his/her regular rate for time actually worked on the holiday. In addition, such employees shall receive eight hours of straight time holiday pay.").

[5]  The CBA is located at R. 461-516.

[6]  CBA § 5.1.

3

this paragraph are not applicable if the employee actually works on the holiday.[7]

In recent years, including under the current CBA, holiday pay (except for Mayor-declared holidays) has been incorporated into the firefighters' salary.[8] Thus, even if a firefighter had to work on a holiday listed in Section 5.1—for example, Christmas Day—his pay would remain the same.[9] If the Mayor declares a holiday, however, that pay is not reflected in the firefighter's base salary, and an additional payment is made for that holiday.[10] Sections 5.2 and 5.3 provide for, among other things, increased pay for those firefighters who are scheduled to work on a Mayor-declared holiday. Section 5.2(a) covers fire suppression personnel:

> Whenever civilian employees are excused from work by an Executive Order of the Mayor, or for any weather emergency for any day not covered by ordinance or statute the firefighters shall receive payment at straight time rates for

---

[7] *Id.*

[8] PERB Decision 5, R. 863 ("The firefighters work a considerably different shift schedule from all other City employees. Their schedule consists of one twenty-four (24) hour period on duty, followed by seventy-two (72) hours off. Perhaps due in part to this unusual schedule and the essential nature of firefighter responsibilities 24 hours a day, 365 days each year, at some point prior to July 1, 2010, holiday pay for firefighters was rolled into the base salary calculations."); *see also* Gimbel Test. R. 742 ("Q: And any day that the mayor designated as a holiday was not rolled into salary? A: No."). The record, in part, is drawn from the testimony of Martha Gimbel, the Director of Labor Relations and Classification for Wilmington, who testified before the Executive Director. Such testimony is cited as "Gimbel Test. R. #."

[9] Gimbel Test. R. 737 ("Q: What do firefighters who are working [New Year's Day] receive . . . ? A: They do not receive anything extra. It is treated as a regular workday.").

[10] *Id.* at R. 742.

4

> those who are required to report for duty for that tour. No firefighter shall be compensated for more than 16 hours (8 hours per unit as defined in Article 3) in any one tour. Any member who was scheduled on vacation on a holiday not designated on Section 5.1 shall receive 16 hours pay at straight time.[11]

Thus, when a firefighter works on a Mayor-declared holiday, he earns his usual salary plus additional pay at his normal hourly rate for the hours he actually worked. The additional pay for fire suppression employees is capped at eight hours per twelve-hour period, and further capped at sixteen hours per twenty-four-hour period. Similarly, if a firefighter was scheduled to work the Mayor-designated holiday, but was authorized to use vacation time, he would earn his normal salary plus 16 hours of additional pay.

Section 5.3 operates in a similar fashion to Section 5.2, but applies to administrative personnel, instead of fire suppression personnel. Section 5.3(a) provides:

> Whenever civilian employees are excused from work by an Executive Order of the Mayor, or for any weather emergency for any day not covered by ordinance or statute the firefighters shall receive payment at straight time rates for those who are required to report for duty for that day. No firefighter shall be compensated for more than [sic: missing terms] (8 hours per unit as defined in Article 3). Any member who was scheduled on vacation on a holiday not designated in Section 5.1 shall receive 8 hours pay at straight time rate.[12]

---

[11]   CBA § 5.2(a). "Unit" and "Tour" are defined in Article 3 of the CBA. A "unit" is defined as twelve hours, either 8:00 a.m. to 8:00 p.m. or 8:00 p.m. to 8:00 a.m. A tour is defined as a 24-hour period from 8:00 a.m. to 8:00 a.m. the next day. CBA Art. 3.

[12]   CBA § 5.3(a).

Although nearly identical to Section 5.2(a), administrative personnel appear to be able to earn between eight and ten hours of additional pay, instead of sixteen, under Section 5.3.[13] Finally, both parties emphasize the final paragraph of Section 5.3, which provides, "This section shall apply only to those employees of the Fire Department who are scheduled to work during the day/tour or portion of the day/tour covered by the Executive Order."

## 2.      The Executive Director's decision

In early 2013, the City provided holiday pay to the forty firefighters who worked on December 24, 2012, either under Section 5.2(a) or 5.3(a).[14] The City did not pay anything other than their normal salary, however, to those firefighters who were not scheduled to, and did not, work the holiday. Near the end of January 2013, the IAFF wrote to the City requesting that it pay those firefighters who had not worked on December 24. When the City refused, the IAFF amended an earlier-filed grievance— which otherwise is not relevant here—to add an unfair labor practice charge. The City denied that charge. On July 9, 2013, a PERB Hearing Officer found that there was probable cause for the charge to proceed.

---

[13]     Gimbel Test. R. 739 ("If I was scheduled to work [the December 24 holiday] and did work it, I would have been paid, under Section 5.2, 16 hours or, 5.3, anywhere between 8 and 10 [hours], depending on whatever their [sic] shift is . . . .").

[14]     Thirty-seven firefighters earned sixteen hours of additional pay under Section 5.2(a). Two firefighters—who worked only twelve hours—earned eight hours of additional pay, also per Section 5.2(a). And one firefighter earned eight hours of additional pay under Section 5.3(a). Exec. Director's Op. 15, R. 824.

On October 15, 2013, a hearing was held before PERB's Executive Director. The parties viewed the issue as being purely legal. The only witness, Martha Gimbel, the City's Director of Labor Relations & Classification, testified for the purpose of "establish[ing] a timeline."[15] On May 13, 2014, by written opinion, the Executive Director held that the City was not obligated to pay the firefighters who did not work on the December 24 holiday. As part of her decision, the Executive Director found that the CBA was "clear and unambiguous on its face."[16] Under her interpretation, Section 5.1's first paragraph defined eleven specified holidays and any other days the Mayor might designate as "holidays with pay," and Sections 5.2 and 5.3 defined how firefighters would be compensated for Mayor-designated holidays.[17] Ultimately, the Executive Director determined that "[a]dditional compensation for firefighters who [were] not required to work is neither addressed nor required in Article 5."[18]

### 3. PERB's decision

On May 19, 2014, the IAFF appealed to PERB. A hearing was held on June 18, 2014. PERB reviewed the Executive Director's decision for error that was "arbitrary, capricious, contrary to law, or unsupported by the record."[19] On June 24, 2014, in a written opinion, PERB affirmed the Executive Director's decision. PERB found that

---

[15] Exec. Director Hr'g, R. 699.

[16] Exec. Director Op. 17, R. 826.

[17] *Id.* at 16-17, R. 826-27.

[18] *Id.* at 17, R. 826.

[19] PERB Decision 4, R. 862.

7

Section 5.1 established those days that were holidays with pay and that Sections 5.2 and 5.3 "explicitly set[] forth how firefighters (both those working suppression and those in administration) are to be compensated if they are required to work on a holiday."[20] PERB concluded that "[t]he record is devoid of any evidence to support [the IAFF]'s interpretation of Article 5, specifically the second paragraph of section 5.1. There is no evidence in the record as to how this provision has been applied in the past or that the parties discussed this possible scenario during negotiations."[21] Ultimately, PERB held that the IAFF failed to establish that the Executive Director's decision was arbitrary, capricious, contrary to law, or unsupported by the record.[22]

### B. Procedural History

On June 27, 2014, the IAFF appealed PERB's decision to this Court under 19 *Del. C.* § 1609. The IAFF appealed on the grounds that: (1) PERB erred as a matter of law; (2) PERB erred as a matter of fact; (3) PERB acted in a manner that was arbitrary and capricious; and (4) PERB's decision is not supported by substantial evidence.[23] After the appellate briefing was completed, I heard argument on January 22, 2015 (the

---

[20]     *Id.* at 5, R. 863.

[21]     *Id.* at 5-6, R. 863-64 ("The charge, however, fails to establish that the City instituted a unilateral change to the status quo, because the contract does not, on its face, support the interpretation offered by [the IAFF]. There is no need to go beyond the plan [sic: "plain"] language of the contract unless it is ambiguous on its face. This language is not.").

[22]     *Id.* at 7, R. 865.

[23]     IAFF's Notice of Appeal 2.

8

"Argument"). This Memorandum Opinion constitutes my ruling on the IAFF's appeal from PERB's June 24, 2014 decision.

## C. Parties' Contentions

In support of its appeal, the IAFF principally argues that: (1) the PERB decision renders portions of Article 5 meaningless; and (2) the PERB decision frustrates the CBA's intended purpose of mirroring Chapter 40's compensation for civilian employees.

The City contends the PERB decision is supported by substantial evidence. In response to the IAFF, the City argues that the CBA is unambiguous and the City therefore has to provide holiday pay only to those firefighters who worked on December 24 or previously had arranged to take vacation time on that day. Furthermore, the City contends that the IAFF's interpretation of the CBA renders other portions of Article 5 meaningless and that Chapter 40 is irrelevant to how firefighters are compensated for holidays under the CBA.

## II. ANALYSIS

## A. Standard of Review

The Court reviews legal issues decided by PERB de novo, but with a degree of deference because of PERB's expertise in labor issues. The Court accepts PERB's factual findings as correct if they are supported by substantial evidence.[24] Substantial

---

[24] *Smyrna Police Empls. Ass'n v. Town of Smyrna*, 2007 WL 3145286, at *3 (Del. Ch. Oct. 17, 2007).

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25]

For the IAFF to succeed on this appeal, it must show that, contrary to PERB's determination, the City violated 19 *Del. C.* § 1607(a)(5) by failing to negotiate a term of the CBA in good faith. One way a party may violate Section 1607(a)(5) is by unilaterally changing a term of a collective bargaining agreement that the parties otherwise would be required to negotiate.[26] Wages is an example of a term that is a mandatory subject of collective bargaining.[27] Thus, if the CBA required the City to pay additional holiday pay to all firefighters for Mayor-declared holidays, the City would have violated Section 1607(a)(5) by refusing to do so.

Whether the CBA requires the City to pay all firefighters holiday pay for Mayor-declared holidays is a question of contract interpretation. "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[28] The goal of contract interpretation is to give contract terms the effect that the parties intended, without rendering any term

---

[25] *Id.*

[26] *See Am. Fed'n of State, Cty. & Mun. Empls. v. State, Dep't of Health & Soc. Servs.*, 61 A.3d 620, 632 (Del. Ch. 2012) (noting that a party violates Section 1307(a) when it unilaterally changes a term subject to mandatory collective bargaining); *see also* PERB Decision 6, R. 864 (citation omitted).

[27] *See* 19 *Del. C.* § 1302(e) & (t) (employees who may collectively bargain may negotiate "terms and conditions of employment," which includes "matters concerning or related to wages, salaries, [and] hours.").

[28] *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (citation omitted) (internal quotation marks omitted).

10

meaningless.[29] Thus, when a contract term is unambiguous—that is, the term is not reasonably susceptible to more than one meaning—courts give effect to the term's plain-language meaning. If a contract is unambiguous, a court may not consider extrinsic evidence.[30] Whether the CBA is ambiguous is a question I review de novo. But, to the extent that I find the contract ambiguous, I must defer to PERB's interpretation so long as it is supported by substantial evidence.[31]

## B. The CBA's Provisions

### 1. Section 5.1 unambiguously provides for holiday pay for Mayor-declared holidays

The IAFF contends that part of Section 5.1's first paragraph is rendered meaningless if, as the City argues, only those firefighters who worked the Mayor-declared holiday, December 24, 2102, earn holiday pay. The relevant portion of Section

---

[29] *E.g.*, *Sonitrol Hldg. Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992); *Delta & Pine Land Co. v. Monsanto Co.*, 2006 WL 1510417, at *4 (Del. Ch. May 24, 2006) ("It is, of course, a familiar principle that contracts must be interpreted in a manner that does not render any provision 'illusory or meaningless.'"(quoting *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001))).

[30] *Compare Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."), *with Salamone*, 106 A.3d at 369 ("Where a contract is ambiguous, the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." (internal quotation marks omitted)).

[31] *Wilm. Firefighters Ass'n, Local 1590 v. City of Wilm.*, 2002 WL 418032, at *6 (Del. Ch. Mar. 12, 2002) ("To the extent that the parity provision is ambiguous and subject to more than one reasonable interpretation, this court must respect the PERB's choice of one of those interpretations so long as its decision is supported by substantial evidence.").

11

5.1 provides: "The following [explicitly identified holidays] and such other days as the Mayor may designate shall be holidays with pay . . . ."[32] The IAFF asserts that, based on the City's interpretation, the phrase, "and other days as the Mayor may designate" could be deleted from Section 5.1 because Sections 5.2(a) and 5.3(a) already provide for additional pay for those employees who are scheduled to work on the Mayor-declared holiday. Additionally, the IAFF argues that the second paragraph of Section 5.1 would be meaningless if firefighters who are not otherwise authorized to be absent, *e.g.*, because of an excused absence or because they are non-essential employees, have to work the Mayor-declared holiday to earn holiday pay.

I conclude that the plain language of Section 5.1 requires holiday pay for the firefighters even if they were not scheduled to work the Mayor-declared holiday. The first paragraph of Section 5.1 provides that Mayor-declared holidays will be "holidays with pay." And, the second paragraph provides that:

> Employees shall not be paid for a holiday (8 hours pay) if they are absent from work on the employee's last scheduled workday before the holiday, the holiday (*if scheduled to work for the holiday*), or the employee's next scheduled workday following the holiday unless excused for one of [three specified] reasons . . . . The stipulations in this paragraph are not applicable if the employee actually works on the holiday.[33]

A necessary precondition of the firefighters forfeiting their holiday pay, therefore, would seem to be that the firefighters are entitled to holiday pay in the first place. The plain

---

[32] CBA § 5.1.

[33] *Id.* (emphasis added).

language of Section 5.1 thus appears to require that firefighters not scheduled to work on a Mayor-declared holiday still would receive eight hours pay so long as they worked on their scheduled days immediately preceding and following the holiday or else had an excused absence for those days. Thus, for example, if a firefighter's regularly scheduled tours fell on December 23 and 27, and then the Mayor declared December 24 to be a holiday, then that firefighter would receive eight hours pay for the December 24 holiday contingent only upon that firefighter working his scheduled shifts on December 23 and 27.

I am not persuaded by the City's arguments to the contrary. First, the City argues that Section 5.1's first paragraph defines the holidays for which firefighters are guaranteed a full paycheck, and the second paragraph provides how they could lose a portion of that full paycheck.[34] The City contends that because holiday pay was incorporated into the firefighters' salary sometime before the adoption of the current CBA, Section 5.1 serves only as a penalty.[35] Because I find Section 5.1 unambiguous, however, extrinsic evidence, such as the parties' prior dealings, is not relevant to the contract interpretation issue before me. Even if I did consider such evidence, however, the record indicates that Mayor-declared holidays were not incorporated into the firefighters' pay, which undermines the City's position.[36]

---

[34] City's Answering Br. 20.

[35] *Id.* at 19.

[36] Gimbel Test. R. 742 ("Q: And any day that the mayor designated as a holiday was not rolled into salary? A: No.").

Second, the City argues that paying those firefighters who did not work on a Mayor-declared holiday, whether or not they were scheduled to work that day, would render the phrase "for those who are required to report for duty"[37] in Section 5.2(a) and 5.3(a) meaningless, because the firefighters would receive the same holiday pay regardless of whether they worked.[38] I disagree. Section 5.1 establishes a baseline of holiday pay for a Mayor-declared holiday of eight hours, regardless of whether the employee works. By working on the holiday, however, the firefighter could earn *more than* eight hours pay, but only up to the caps established by Sections 5.2 and 5.3. Section 5.2(a), for example, states: "No firefighter shall be compensated for more than 16 hours (8 hours per unit . . .)." Section 5.3(a) contains a similar provision.[39] Accordingly, my interpretation of Section 5.1 does not render any terms in Sections 5.2 or 5.3 superfluous.

---

[37] "Whenever civilian employees are excused from work by an Executive Order of the Mayor, or for any weather emergency for any day not covered by ordinance or statute *the firefighters shall receive payment at straight time rates for those who are required to report for duty for that tour*." Section 5.2(a) (emphasis added).

[38] *See* City's Answering Br. 21 ("Sections 5.2 and 5.3 can be thought of as a bonus for Firefighters who actually worked on a Mayor-Declared Holiday."); *see also* Arg. Tr. 21-22.

[39] It is not clear how many hours more than eight an administrative employee would earn because the CBA is missing words. Section 5.3(a) reads, in relevant part: "No firefighter shall be compensated for more than [sic] (8 hours per unit . . . )." Still, the parenthetical contemplates the possibility of multiple units. For example, the fire suppression personnel who worked two twelve-hour units on December 24, 2012, could receive sixteen hours of holiday pay. Section 5.2(a) explicitly states as much. Section 5.3(a) may contemplate a lower maximum cap on holiday hours for administrative personnel, but I need not reach that issue. *See supra* note 13 (describing Gimbel's testimony that administrative personnel could receive eight to ten hours of holiday pay).

**2.       The last paragraph of Article 5 does not alter the City's obligations under Section 5.1**

The City argues that Article 5's final paragraph restricts holiday pay to only those firefighters who work the Mayor-declared holidays. The last paragraph in Article 5 provides: "This section shall apply only to those employees of the Fire Department who are scheduled to work during the day/tour or portion of the day/tour covered by the Executive Order." The City contends that this paragraph applies to both Sections 5.2 and 5.3, and therefore restricts holiday pay for Mayor-declared holidays to those firefighters scheduled to work. The IAFF counters that the paragraph, by its own terms, applies only to Section 5.3.

The last paragraph of Article 5 of the CBA admittedly is not a model of clarity. That paragraph potentially could have three different meanings. First, under a literal interpretation, the paragraph is limited to "This section"—*i.e.*, Section 5.3. Indeed, the final paragraph appears under the heading for Section 5.3. If the last paragraph was meant to apply to other sections, the parties easily could have made that clear. For example, instead of using the phrase "This section," the parties could have referred to "These sections" or "This article" or some other phrase that would have made it applicable to a larger part or all of Article 5.

Second, the parties could have intended the concluding paragraph to apply to both Sections 5.2 and 5.3. The paragraph explicitly applies to "those employees of the Fire Department who are scheduled to work during the day/tour or portion of the day/tour." Although Sections 5.2(a) and 5.3(a) employ nearly identical language, Section 5.2(a)

15

defines the shift for fire suppression personnel as a "tour," while Section 5.3(a) refers to the shift for the administrative personnel as a "day." The last paragraph's use of language encompassing both of the defined terms "tour" and "day" could suggest that the paragraph was meant to cover both Sections. If the last paragraph was intended to apply to only administrative personnel, then using "day" instead of "day/tour" would have sufficed. Moreover, the last paragraph of Section 5.3, which also is the last paragraph in Article 5, uses "employee"—a defined term, which includes fire suppression employees—instead of limiting the paragraph to just "administrative personnel."[40]

Finally, the paragraph could be read to apply to the entirety of Article 5, although neither party advanced such a construction. The final paragraph refers solely to days or tours "covered by the Executive Order." By limiting the paragraph to days or tours "covered by the Executive Order," the paragraph conceivably could cover both Sections 5.2(a) and 5.3(a). The prefatory clauses in each of those sections provides, "Whenever civilian employees are excused from work by an Executive Order of the Mayor . . . ." It also conceivably could cover Mayor-declared holidays in Section 5.1 because the Mayor may designate a holiday only by issuing an executive order. That seems unlikely, however, because Section 5.1 covers holidays generally and, unlike Sections 5.2 and 5.3, makes no specific reference to an Executive Order.

I find that the third interpretation is unreasonable and conflicts with at least Section 5.1 for other reasons as well. For example, the three situations in which holiday

---

[40]     *See* CBA Art. 3.

16

pay would be forfeited under the second paragraph of Section 5.1 are "not applicable if the employee actually works on the holiday."[41]  One of those situations is if the employee is absent from work without a valid excuse on the holiday, if she was scheduled to work that day.  The final paragraph of Section 5.3 states, in part, that it applies only to those employees "scheduled to work during the day/tour . . . covered by the Executive Order." The other two forfeiture conditions in Section 5.1 would make little sense if the entire Article 5 applied only when an employee was scheduled to work on a day covered by an Executive Order, because those conditions purportedly apply to *all holidays* listed in Section 5.1.

This leaves the first two interpretations.  Arguably, both are "reasonable"—at least to the extent each suffers from similar shortcomings—and the provision is ambiguous. The first interpretation is the more literal and structurally intuitive, but the "day/tour" term is partially superfluous, because Section 5.3 twice speaks in terms of administrative personnel working on a specific "day," whereas Section 5.2 twice states that fire suppression personnel work on a "tour."  The second interpretation, however, requires ignoring that the final paragraph literally says "This section" and is arranged as the third paragraph under the heading of Section 5.3.  Regardless, this poorly drafted provision does not affect my determination that Section 5.1 provides for holiday pay for those firefighters not required to work on a Mayor-declared holiday.

---

[41]     CBA § 5.1.

A well-settled canon of construction provides that more specific provisions govern over the more general.[42] Sections 5.2 and 5.3 do not apply only to Mayor-designated holidays. Rather, Sections 5.2 and 5.3 provide for additional pay for firefighters scheduled to work "[w]henever civilian employees are excused from work by an Executive Order of the Mayor, or for any weather emergency for any day not covered by ordinance or statute."[43] A Mayor-declared holiday, therefore, is just one of the possible situations covered by those two Sections. Additionally, by their terms Sections 5.2 and 5.3 cover the situations when firefighters "are required to report for duty for that tour" or "that day." The provisions are silent on the status of firefighters who are *not* required to report for duty.

In contrast, Section 5.1 defines which days of the year are holidays with pay and enumerates how the firefighters could lose pay for those holidays. The section includes Mayor-declared holidays among the holidays with pay. Although Sections 5.2 and 5.3 are more specific provisions, controlling situations in which a firefighter is required to report for duty, they do not otherwise affect the status of firefighters who were not scheduled to work on a Mayor-declared holiday. Pay for firefighters in the latter category is governed by the terms of Section 5.1. This interpretation arguably still might leave the meaning of the final paragraph of Article 5 somewhat unclear, but there is no

---

[42] *DCV Hldgs., Inc. v. ConAgra, Inc.,* 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

[43] CBA §§ 5.2(a) & 5.3(a).

reasonable construction of Article 5 of the CBA under which Sections 5.2 and 5.3—or the inartfully drafted final paragraph of Article 5—would deny the holiday pay granted to firefighters by the first paragraph of Section 5.1 in the situation of a Mayor-declared holiday. As I construe Section 5.1 and Article 5, therefore, the only way a firefighter who does not work on a Mayor-declared holiday loses the additional eight hours of holiday pay is via one of the forfeiture conditions set forth in the second paragraph of Section 5.1.

Everyday experience also supports my conclusion. It is generally accepted that employers compensate employees for holidays by either giving them the day off with pay or paying them extra for working—colloquially, "the pay or the day."[44] The City's argument runs contrary to this common practice in addition to being inconsistent with the terms of the CBA.

In sum, I conclude that the only reasonable interpretation of Article 5 is that Section 5.1 provides for an additional eight hours of pay for those firefighters who were not scheduled to work on December 24, 2012. In that regard, I also find that while

---

[44] The IAFF's counsel provided an illustrative example (the numbers used are merely for illustrative purposes). At the beginning of the year, any employee is expected to work 260 days and earn X amount of dollars. X would include all of the holiday pay for the designated holidays. When the Mayor declares an additional holiday, however, one of two things could happen. An employee could work 259 days and still earn a salary of X dollars, or an employee could work 260 days and earn X dollars in salary plus eight hours of holiday pay. The issue here centers on the fact that those firefighters who worked the holiday earned X plus (at least) eight hours pay, while the firefighters whose normal day off fell on December 24 also would have worked 260 days but only earned X dollars. Those firefighters who did not work, therefore, received no benefit from the Mayor-declared holiday; they received neither "the pay" nor "the day."

19

Sections 5.2 and 5.3 establish specific rules for paying those firefighters who were required to work on December 24, they do not affect the holiday pay mandated by Section 5.1.[45]

### C. The PERB Decision Is Not Supported by Substantial Evidence

Although I have reached a conclusion inconsistent with PERB, I am mindful of the deference that should be given to its factual determinations if they are supported by substantial evidence.[46] Again, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[47] Here, however, the disputes were limited to PERB's legal conclusions. PERB's "conclusions of law are reviewed on a *de novo* basis, but with a deferential bent, which recognizes the expertise of the PERB in adjudicating disputes in the field of labor law."[48] Above I concluded, as a matter of law, that Section 5.1 of the CBA unambiguously provides that those firefighters who do not work on Mayor-declared holidays are entitled to holiday pay unless one of

---

[45] Wilmington City Code § 40-10(b) states that if a CBA provision "is silent in regard to matters addressed in this chapter, the terms of Chapter 40 shall apply." Wilm. C. § 40-10(b) (2015). Chapter 40 provides that employees earn eight hours of holiday pay regardless of whether they actually worked the Mayor-designated holiday. *Id.* § 40-332(b) ("Any eligible employee whose regularly scheduled day off falls on a holiday shall be entitled to eight hours of straight time holiday pay."). Thus, if the CBA had been "silent" on holiday pay, the firefighters would have been entitled to eight hours of pay under Chapter 40, which is the same result I have reached by analyzing the CBA. But, because I have concluded that the CBA does address this situation and mandates a particular result, I do not consider the CBA to be "silent" on this issue, and therefore I need not address Chapter 40.

[46] *Smyrna Police Empls. Ass'n*, 2007 WL 3145286, at *3.

[47] *Id.*

[48] *Id.*

the forfeiture conditions applies. By contrast, PERB concluded that Section 5.1 established covered holidays, whereas Sections 5.2 and 5.3 of the CBA set forth how firefighters are to be compensated if they are required to work on a holiday. PERB's legal conclusions are incorrect. As previously discussed, Section 5.1 not only defines what days are holidays, but also requires that firefighters be paid for Mayor-declared holidays. Sections 5.2 and 5.3 cover, among other scenarios, firefighters who work on Mayor-declared holidays, and establish rules for paying those individuals.

In this case, there is no factual evidence that justifies deferring to PERB's contrary legal conclusion. The only evidence in the record was the testimony of Martha Gimbel, the City's Director of Labor Relations and Classification, who testified before the Executive Director. Gimbel stated that, in recent years, holiday pay—with the exception of Mayor-designated holidays[49]—was incorporated into the firefighters' salaries.[50] Gimbel also testified that "what [Section 5.1] has meant through the years is that if a day is marked or designated as a day off, this is guaranteeing that you will receive pay for that day so you will have a 40-hour check; not a 48, 40."[51] The City relies heavily on this portion of Gimbel's testimony.[52]

I find Gimbel's testimony that Section 5.1 guarantees all firefighters the equivalent of 40-hours pay per week to be inconsistent, however, with her later testimony about how

---

[49] Gimbel Test. R. 742.

[50] *Id.* at R. 738.

[51] *Id.* at R. 734.

[52] City's Answering Br. 22.

the City used to compensate firefighters for holidays.[53] Before holiday pay was incorporated into the firefighters' base salaries, firefighters used to be paid once, in November, for all of the holidays that year.[54] Thus, while Gimbel did testify that Section 5.1 ensured "a 40-hour check; not a 48, 40," it appears that before the City began incorporating holiday pay into salary, the City effectively did pay firefighters for more than 40 hours for weeks that included a holiday, but that that money was paid in one lump sum. Additionally, because Mayor-designated holidays are in the same clause as the designated holidays, and no evidence was presented that they ever were incorporated into firefighters' base salaries before the adoption of the CBA, the historic usage of Section 5.1 is neither relevant nor determinative of the contract interpretation issue before me. Thus, there is no substantial evidence to support PERB's interpretation of Article 5. The CBA's relevant provision, Section 5.1, is unambiguous: I conclude, as a matter of law, that it requires that those firefighters who did not work on December 24, 2012, be paid eight hours of pay.

## III. CONCLUSION

For the reasons stated in this Memorandum Opinion, PERB's decision is reversed. The CBA requires the City to pay eight hours of pay to those firefighters who were not

---

[53] Gimbel Test. R. 738.

[54] *Id.* ("Many years ago, [the firefighters] were compensated for working the holiday by receiving what's the infamous holiday paycheck in November where they were paid for however many holidays there were that year, 13 or 14.").

22

scheduled to work on the December 24, 2012 Mayor-declared holiday.  This case is remanded for further proceedings consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.